**CHAPMAN DRUG COMPANY**

v.

**Jack BREWER.**

Civ. A. No. 3–74–61.

United States District Court,
E. D. Tennessee, N. D.

July 5, 1974.

Joseph P. Congleton, Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., for plaintiff.

Lewis C. Foster, Jr., Kassem & Foster, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action to recover on a personal guaranty wherein the plaintiff sues the defendant on the terms of a guaranty agreement executed March 27, 1974, in which defendant guaranteed the payment of any and all indebtedness owed to plaintiff by Gibco Discount Drugs, Inc. of Kingsport and Bristol

Tennessee.[1] The parties stipulated that the amount of indebtedness incurred by the Kingsport and Bristol Stores is $13,731.35. Jurisdiction is invoked under Title 28 U.S.C. § 1332(a).

It is the theory of the plaintiff that defendant executed this guaranty agreement on debts owing and to be incurred by drug stores defendant was operating in Kingsport and Bristol, Tennessee. Plaintiff contends that defendant's guarantee was the basis on which it sold goods and extended credit to the Bristol and Kingsport stores in which the defendant owned a majority interest if not the complete interest. In any event, defendant controlled the stores in Kingsport and Bristol at all times material to this suit.

Plaintiff contends that the organization of the new corporation was simply a change in name and that the guarantee applied to the new name as well as to the old and that the defendant is responsible under said guarantee for the indebtedness owed by the new corporation.

The theories of the defendant are substantially as follows: Defendant admits that he executed the guarantee on March 27, 1972, by the terms of which he guaranteed any indebtedness then owing or that might thereafter be owed to plaintiff by Gibco Discount Drugs, Inc., for purchases by Gibco from plaintiff for its drug stores in Kingsport and Bristol, Tennessee. Defendant contends, however, that the indebtedness due plaintiff by Gibco was fully and completely discharged prior to February 21, 1973 at which time the defendant advised plaintiff that the drug stores in Kingsport and Bristol, Tennessee were operating under a different corporation, to wit, Gibsons Discount Pharmacy of Bristol, Inc., and that a new account should be established in that name.

Defendant states further that plaintiff was fully aware of the new account and that any indebtedness to plaintiff from and after February 21, 1973 was owed by Gibbons Discount Pharmacy of Bristol, Inc., and not Gibco Disount Drugs, Inc., and that the defendant never guaranteed the account of Gibsons Discount Pharmacy of Bristol, Inc.

Defendant contends further that the guaranty agreement pertaining to Gibco Discount Drugs, Inc., was terminated and revoked as of February 21, 1973, and that the plaintiff was aware of same and thus defendant is not personally liable for any indebtedness to plaintiff from and after that date.[2]

The issues to which the Court must address itself are as follows:

(1) Did defendant terminate and revoke the guaranty agreement of March 27, 1972 by virtue of the February 21, 1973 letter or other relevant factual circumstances, and (2) was it the inten-

---

1. The agreement provides: "GUARANTY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS:

That, FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned is held and firmly bound unto Chapman Drug Company, Knoxville, Tennessee, its successors and assigns, for the prompt payment of all indebtedness now owing or which might hereafter become due and owing, by Gibco Discount Drugs, Inc., Kingsport, Tennessee, and Gibco Discount Drugs, Inc., Bristol, Tennessee, to Chapman Drug Company, plus all costs of collection including a reasonable attorney's fee, for which payments, well and truly to be made I hereby bind myself, my heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.

Signed, sealed and delivered at Knoxville, Tennessee, this 27 day of Mar., 1972.

/s/Jack Brewer

Witness:

Sue Hutchins."

2. Exhibit 2 is a letter which defendant maintained was a termination and revocation of the Guaranty Agreement of March 27, 1972. It provides, in pertinent part, as follows: "We are now operating the pharmacies at Bristol and Kingsport under the name of Gibsons Discount Pharmacy of Bristol, Inc., and ask that you set up our account thusly, and change our mailing address to P. O. Box 310, Florence, Alabama, 35630 . . . Please re-establish our open account to a maximum of $5,000.00 on each pharmacy per month and we will see that you are taken care of by the tenth of each month" /s/ Jack Brewer, President.

tion of the plaintiff and defendant that the guaranty agreement would cover purchases of the Kingsport and Bristol stores under any name or corporate form which defendant was operating?

 As to the first issue, the answer must be in the negative. The guaranty agreement under consideration here was in the nature of a continuing guarantee, in that it contemplated a future course of dealing between the parties for some indefinite period. Stearns v. Jones, 138 Tenn. 589, 199 S.W. 400 (1917); Holmes v. Elder, 170 Tenn. 257, 94 S.W. 2d 390 (1936).

Such an agreement is effective until revoked by the guarantor or extinguished by operation of law. Stearns v. Jones, supra, 138 Tenn. at 593, 199 S.W. 400; 38 Am.Jur.2d Guaranty § 63 (1968). If defendant had desired to revoke the agreement in his March 27, 1972, letter, supra n. 2, he could have done so in clear, unequivocal language. Rather than do this, defendant spoke in this letter and later correspondence of a mere name change in the stores and it remained apparent to plaintiff at all times material to this suit that there indeed had been no change in control of the two stores. Plaintiff extended credit because of the original guarantee and continued to do so to the other organization on the basis of that original guarantee.

As to the second issue in this law suit the Court finds that it was the intention of the parties that the Guaranty Agreement would cover purchases of the Kingsport and Bristol Stores under any name or corporate form which defendant chose. It is clear that under Tennessee law a guaranty agreement is to be construed so as to give effect to the intentions of the parties. First National Bank v. Foster, 60 Tenn.App. 711, 451 S.W.2d 434, 436 (1969) cert. den. Mar. 2, 1970. Furthermore, guarantors are not favored under the law of Tennessee. W. R. Grace & Co. v. Taylor, 55 Tenn.App. 227, 398 S.W.2d 81 (1965), cert. den. Jan. 17, 1966; Hassel-Hughes

Lumber Co. v. Jackson, 33 Tenn.App. 477, 232 S.W.2d 325, (1949) cert. den. Oct. 3, 1949.

The evidence revealed that defendant did business at the Bristol and Kingsport stores under several corporate names and at all times material to this suit he and his wife were the sole owners of the shares in the various named corporations. It is evident from the record that despite the name changes and shift in corporate forms, plaintiff looked to defendant as guarantor of the transactions and that this was the intent of the parties when the original agreement was signed.

It is accordingly ordered, adjudged and decreed that the plaintiff have and recover of the defendant the sum of $13,731.35 plus any accrued interest from the due date.