IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 1, 2010 Session

# THOMAS GAZLAY, d/b/a PERSONALIZED PLANTING, INC., v. TULSI ASSOCIATES, et al., and THE ESTATE OF HOWARD SEXTON, for decedent HOWARD SEXTON, et al., d/b/a PRECISION CONSTRUCTION COMPANY

**Appeal from the Circuit Court for Sevier County**
**No. 2004-0192-IV      Hon. O. Duane Slone, Judge**

**No. E2008-02490-COA-R3-CV - FILED APRIL 8, 2010**

Plaintiff subcontractor, sued contractor, who constructed a hotel for co-defendant owner of hotel for breach of contract. Construction company cross-filed against defendant hotel owner. The Trial Court, after hearing proof, entered a joint settlement judgment against both defendants on behalf of the plaintiff and based the judgment on the terms of the settlement agreement which had been entered in a prior action in a suit between the defendants. The owner of the hotel appealed. We hold the Trial Court erred in its interpretation of the settlement agreement between the defendants, and set aside the judgment against appellant and direct that the contractor is liable for all the damages awarded, based on appellants' cross-action against the contractor.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, and Affirmed in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

William T. Alt, Chattanooga, Tennessee, for the appellants, Tulsi Associates, et al.

Jerry K. Galyon, Sevierville, Tennessee, for the appellee, Thomas Gazlay, d/b/a Personalized Plantings, Inc.

# OPINION

Thomas Gazlay[1], doing business as Personalized Planting, Inc. (Personalized Planting) filed suit in Sessions Court on December 1, 2003 for breach of contract against Mike Patel, a co-owner of Tulsi Associates (Tulsi) and Howard Sexton and Jim Reagan, doing business as Precision Construction Company (Precision). Personalized Planting demanded $10,429.84 plus interest based on an alleged breach of a contract to provide landscaping. Tulsi filed a cross-claim against Precision for breach of an indemnity agreement, but Precision did not file a cross-claim against Tulsi.

The Sessions Court awarded $12,270.61 plus interest to Personalized Planting and against Tulsi and dismissed Tulsi's cross claim.

Tulsi appealed to the Circuit Court on March 11, 2004, and more than four years later, on May 28, 2008, the matter was heard before the Trial Court. There is no transcript of the proceeding, although numerous exhibits were filed in the record, and on July 17, 2008 a final judgment was entered granting plaintiff an award of $27,166.56 against all defendants jointly and severally. The award consisted of damages of $10,429.84 plus $14,236.74 in interest of 18% and $2,500.00 for attorneys' fees. The judgment provides that "[d]ue to the indemnification of the Defendants of each other, as against each other, the Tulsi Defendants are responsible for one-half of the judgment and the Precision Defendants are responsible for one-half the judgment." The Trial Court gave no further reasons for the judgment nor did it issue any findings of fact.

Subsequently, Tulsi filed a motion to alter or amend the judgment under Tenn. R. Civ. P. 52.02 and 59.04 "to make specific findings of fact and amend the judgment . . . accordingly". The Trial Court denied the motion to alter or amend on October 9, 2008 without providing any reasons for the judgment.

Tulsi filed a notice of appeal, and filed a statement of evidence in the Trial Court. The Trial Court entered an order finding the appellant's statement of the evidence was deemed approved by the Trial Judge in accordance with Tenn. R. App. P. 24(f). Personalized Planting appeared as appellee in this Court and has filed a brief. Precision has not filed an appellate brief nor made any appearance in this Court.

---

[1]Plaintiff/appellee is referred to as Thomas Gazlay in the lower court record although he is referred to as Gaslay and Gazlay in the circuit court record and both Gazlay and Gaslay in the appellate record. He will be referred to as Gazlay in this Opinion.

At trial, Thomas Gazlay testified that he was engaged in the business of landscaping and that he had been employed on several occasions by defendant Precision to perform landscaping as a subcontractor on construction projects. He testified that Howard Sexton contacted him regarding the job at issue and asked him to provide a proposal for landscaping work to be done at the Baymont Hotel. He testified that he met with Mr. Sexton at the hotel, during the meeting he estimated the cost of the job, and his cost estimate was admitted into evidence.

Gazlay related that he returned to the work site with a work order dated October 11, 2000 and that his initial estimate reduced the estimated price by several hundred dollars based on the changes made at the earlier meeting. The work order was presented to Mr. Sexton who accepted it by writing on the order "Precision Construction Company, Howard Sexton" and then signed his name on the order. Gazlay testified that he installed the landscaping and although he saw Mr. Patel at the work site, he made no attempt to have Mr. Patel sign the work order.

Gazlay said that he submitted an invoice for the work, which was unpaid, and when he contacted Precision, he was told that Precision had not been paid for the landscaping work by the hotel's owner.

Gazlay's attorney, Mr. Galyon, testified regarding the time he had spent representing Gazlay in the suit and that he believed that $2,500.00 was a reasonable fee for his efforts.

Mike Patel testified on behalf of Tulsi Associates, the owner of the Baymont Hotel. He testified that Tulsi had entered into a written construction contract with Precision whereby Precision, as general contractor, was to construct the Baymont Hotel for Tulsi. Mr. Patel stated that it was his understanding that Precision was to install the landscaping represented in the construction drawings as part of the construction contract.

Mr. Patel testified that a dispute arose between the hotel owner Tulsi and the general contractor Precision, which involved the quality of the work performed by Precision and specifically involved the fact that the hotel roof leaked. He explained that the dispute with Precision led to a lawsuit that was eventually settled. The settlement provided that the damages claimed by Tulsi were to be offset by the funds that remained to be paid to Precision under the contract. The settlement terms were contained in a Mutual Settlement and Release Agreement, which was entered into evidence. Patel testified that Tulsi regarded the landscaping performed by Personalized Planting to be on behalf of Precision in fulfillment of the construction contract between Precision and Tulsi.

Jimmy Reagan testified on behalf of Precision. He stated that Precision was contacted

by Gazlay regarding the nonpayment of its invoice for the landscaping work at the Baymont Hotel. Reagan testified that Precision never took the position that it did not owe Personalized Planting the amount of the invoice. However, Precision, who had a dispute with the hotel owner, had not been paid for the landscaping by the owner. He also testified that at the time Precision executed the settlement agreement with Tulsi, Tulsi was aware that the Personalized Planting invoice had not been paid. The record contains the "Mutual Settlement and Release Agreement" between Tulsi Precision, dated June 30, 2003, and July 7, 2003, regarding the lawsuit in connection with construction of the Baymont Hotel. The Agreement reflects that the parties agreed to "take nothing and to simply release the other of any claims that have been or could be made against the other, to hereby wish to evidence their agreement to such effect; to dismiss any pending legal proceedings in connection with their disputes; and, to indemnify each as to any claims that might be made by another party in connection with the work or services performed in relation to the Project." The next paragraph states that the agreement is a "full discharge of the responsibilities that either had to the other in connection with the Contract or the construction of the Project."

The Settlement Agreement provides more detailed indemnity provisions:

Notwithstanding anything to the contrary in this Agreement, each party hereby agrees that it shall indemnify, defend and hold harmless the other party hereto as against any claim made by any third party that is asserted to arise out of or in connection with the Contract or the construction of the Project. Including, but not limited to, the costs of investigation and the expenses, including reasonable attorney's fees, that the indemnified party may be requested or forced to incur as a result of the action or inaction of the indemnifying party.

The issues on appeal are:

I.      Did the Trial Court err in finding Tulsi liable to personalized planting?

II.     Did the Trial Court err in its interpretation of the indemnity provision of the settlement agreement between Tulsi and Precision as providing that Tulsi was jointly and solidarily liable with precision to Personalized Planting?

A trial court's findings of fact in non-jury cases are reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). Where the trial court has not provided findings of fact, the appellate court conducts an independent review of the evidence with no presumption of correctness. *Brooks v. Brooks*, 992 S.W. 2d 403, 405 (Tenn.1999) The standard of review for an appeal of the

trial court's ruling on a Rule 59.04 motion to alter or amend a judgment is whether the trial court abused its discretion. *Stovall v. Clarke,* 113 S.W.3d 715, 721 (Tenn. 2003). Likewise, a trial court's decision to deny or grant a motion for additional findings under rule 52.02 is within the discretion of the trial court. *Holladay v. Speed*, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005)(citing *Long Equipment Co., Inc. v. Keeton,* 736 S.W.2d 611, 614 (Tenn. Ct. App. 1987)).

Appellant Tulsi abandoned the position it took in its motion to alter or amend filed in the Trial Court and now claims that it bears no liability to Personalized Planting as there was never any privity of contract between plaintiff and Tulsi. Personalized Planting on the other hand contends that the contract for landscaping was between plaintiff and Tulsi and that Precision had no contract with plaintiff. The evidence set forth in the statement of the evidence simply does not support Personalized Planting's position that the agreement for landscaping was between Tulsi and plaintiff. However, this issue is moot because the Trial Court did not find liability on the part of Tulsi based on any contract in fact or implied with Personalized Planting. The Trial Court specifically stated Tulsi was responsible for one half of the judgment and Precision was responsible for the other half "[d]ue to the indemnification of the Defendants of each other, as against each other. . . ." Accordingly, the Trial Court's judgment against Tulsi was based solely on the indemnity provisions of the settlement agreement between Tulsi and Precision and was not based on any finding of contract between Tulsi and Personalized Planting.

The Trial Court did err in its interpretation of the indemnity provisions of the settlement agreement between Tulsi and Precision. As heretofore discussed the Trial Court based its judgment solely on the indemnity provisions of the settlement between Tulsi and Precision. The Trial Court erred in basing its judgment against Tulsi on the indemnity provisions for the simple reason that Precision never made a claim against Tulsi for indemnification in a cross-claim or otherwise. As this issue was not before the Court, it erred when it held Tulsi liable based on its agreement to indemnify Precision. For this reason, the judgment of the Trial Court against Tulsi is reversed.

In conclusion, the Trial Court erred when it held Tulsi liable for one-half of the damages awarded to plaintiff. The Judgment is reversed and the cause remanded for assessment of all damages to Precision. The cost of the appeal is assessed to Precision Construction Company.

_____

HERSCHEL PICKENS FRANKS, P.J.